Moss *v.* Bushmaier.

Opinion delivered December 7, 1931.

*Starbird & Starbird,* for appellant.
*Partain & Agee,* for appellee.

SMITH, J. Appellant recovered a judgment against W. A. Bushmaier, hereinafter referred to as the defendant, and levied upon certain bank stock and a bank deposit as the property of defendant. An intervention was filed by W. A. Bushmaier, Jr., hereinafter referred to as the intervener, who claimed to be the owner of the stock and also of the deposit. Testimony was heard upon the intervention, from which the court found that the intervener was the owner of the bank stock, but not of the deposit, and a decree was rendered accordingly, from which all parties have appealed.

In response to a writ of garnishment which appellant had sued out and caused to be issued, the Citizens' Bank & Trust Company, of Van Buren, answered that defendant, W. A. Bushmaier, had on deposit in his name in said bank the sum of $507.83, and that he "also owned $500, par value, of the capital stock of this corporation, evidenced by its stock certificate now in the possession of said defendant." In addition to the levy made upon the stock alleged to be owned by the defendant in the Citizens' Bank, a levy was also made upon twenty shares of the capital stock of the First & Crawford County Bank, of Van Buren. The ownership of these shares of stock in the two banks and that of the deposit in the Citizens' Bank is the subject-matter of this litigation.

The following facts were developed in the testimony heard by the court. Intervener is the son of the defendant, and has his father's full name and is known as W. A. Bushmaier, Jr., and so signs his name. His father— defendant—appears to have been known as W. A. Bushmaier, and did not conduct his business as W. A. Bushmaier, Sr.

The bank deposit represents the proceeds of the sale of certain cotton grown on a farm owned by defendant,

the title to which intervener claims. Intervener claims to have advanced the money used by defendant in growing the cotton. But we think the testimony sustains the finding of the chancellor, that the cotton and the proceeds thereof represented by the bank deposit belonged to the defendant, and the decree upon that branch of the case is therefore affirmed.

Intervener claimed to have owned the farm upon which the cotton was grown; but the testimony shows that he had no deed to it, and that defendant was in possession and grew the crop. Intervener appears to have paid off a mortgage on this farm which his father had given, and to have taken an assignment thereof to himself, but the defendant operated the farm and made in his own name the original deposit of which the balance herein garnished was a part, and this account was at all times subject to the check of defendant.

Intervener testified that he advanced the money, a thousand dollars, with which the stock in the Citizens' Bank was purchased, and that he paid two for one for the stock. The stock certificate, however, was issued and delivered to defendant, although intervener testified, and so did the defendant, that, after the stock had been so issued to defendant, it was delivered to the intervener, and that it has since at all times been in intervener's possession.

Intervener admitted that his father was the original owner of $500 of the capital stock of the Crawford County Bank, but claims to have purchased this stock from his father, and to have paid $1,500 for it. The testimony shows that the Crawford County Bank was consolidated with the First National Bank of Van Buren, and that, on account of the difference in value of the stocks of the consolidated banks, intervener was required to pay, and did pay $137 additional in order to retain $500 of the stock of the consolidated bank. Mr. Izard had been the president of the Crawford County Bank, and became the president of the consolidated bank, known as the First & Crawford County Bank. He testified that the certifi-

cate for the $500 of stock in the Crawford County Bank originally owned by defendant was surrendered to the consolidated bank by intervener, and that, in a conversation between defendant and intervener, it was stated that the stock in the new bank was to be issued to the intervener, and that the intervener paid the difference in value by a check upon his own account, and that the stock in the consolidated bank was issued to W. A. Bushmaier. This stock, upon its issuance, was delivered to intervener, and was receipted for by him, and has since at all times been in his possession.

Defendant testified that he subscribed for $500 of the capital stock of the Citizens' Bank, for which he paid a thousand dollars, and that he had the transaction with Mr. Bryan, the president of that bank, but that he did not tell Mr. Bryan for whom he was purchasing the stock, and that, while the stock was issued to W. A. Bushmaier, it was paid for by W. A. Bushmaier, Jr., but witness signed the receipt for the certificate, which certificate he gave to his son, who has since been continuously in possession of it.

When asked if he was insolvent, defendant answered: "I expect I would be bankrupt if you pushed me down to bed rock," and he also stated that intervener had acquired title to practically all the property he had owned. He also admitted that the checking account of which the deposit with the Citizens' Bank was a part was kept in his name.

Mr. Izard, the president of the consolidated bank, testified that he had been president of the Crawford County Bank before the consolidation, and that upon the consolidation stockholders of the consolidated bank were allowed to pay the difference in value between the old and the new stock and retain the same amount of stock in the new bank; but, if this was not done, stockholders were issued their *pro rata* stock in the new bank and were given a participation certificate showing they had an interest in the assets of the old Crawford County Bank. This plan appears to have been adopted because of the

impairment of value of the assets of the Crawford County Bank.

Mr. Bryan, the president of the Citizens' Bank, testified that the account with his bank, of which the deposit garnished is the balance, was made originally by defendant and was carried in his name, and was subject to his check except for the garnishment, and that he sold the stock in his bank to defendant, W. A. Bushmaier, and issued it to him, and that defendant receipted for the stock, and that the subsequent dividends thereon had been paid to defendant. On his cross-examination, Mr. Bryan testified that his impression was that the stock was paid for with a check signed by W. A. Bushmaier, Jr., sheriff and collector, but all the transaction was with defendant, and that the stock was issued to him.

We are of the opinion, under this testimony, that defendant was the owner of the deposit in the Citizens' Bank, as found by the court, and was also the owner of the $500 stock in that bank outstanding in his name.

Defendant admits his insolvency, and, while he and his son both testified that intervener paid the value of the stock by assuming and paying certain of defendant's obligations, the stock in the Citizens' Bank has been permitted to remain in the name of defendant. Had that bank become insolvent, it is not likely that any stockholder's liability would have been asserted against intervener, and it is reasonably certain that no such liability could have been enforced.

The statute provides how bank stock may be transferred. Section 21 of the original banking act of 1913 (Acts 1913, p. 462), which provides how bank stock may be transferred, was amended by act 496 of the General Acts of 1921 (General Acts 1921, page 514), and by this amendatory act of 1921 § 21 of the original act of 1913 was amended to read as follows: "The stock of every bank shall be deemed personal property, and in case of sale shall be transferred only on the books of such corporation in such form as the commissioner shall prescribe, and whenever any stockholder has sold and may wish to transfer his stock, a certificate of such transfer,

signed by the president and cashier, or secretary, and setting forth the name and residence of the transferrer and the transferee, shall be deposited by said transferrer with the commissioner, who, after he has indorsed it as having been filed with him, shall return it for filing with the county clerk of the county in which the said bank is located. The said county clerk shall note the time of the filing thereon and record it in a book to be kept for that purpose, for which the clerk shall be entitled to a fee of twenty-five cents. No sale or transfer of stock shall be valid as against creditors of the transferrer until such certificate so filed with, and indorsed and returned by, the commissioner has been filed for record with said county clerk.''

The purpose of this statute was to put at rest just such questions as we have here, and to furnish a conclusive evidence of the ownership of bank stock so far as creditors of the transferrer of certificates of bank stock are concerned. Transfers of such stock are not valid as against creditors unless the statute governing the manner of transfer has been complied with.

It may be true that the stock of the Citizens' Bank was paid for by a check drawn by intervener and signed by himself as sheriff and collector; but it is also true, as Mr. Bryan, the president of the bank, testified, and as the records of the bank show, that the stock was sold to defendant and was issued to him, and the receipt for the certificate therefor was signed by him and the subsequent dividends thereon were paid to him, and there is no record as required by law that he ever transferred the stock in the Citizens' Bank to his son, the intervener.

It was held in the case of *Taylor* v. *McKennon*, 178 Ark. 223 [10 S. W. 260], (to quote the syllabus in that case) that, ''Where defendant transferred bank stock certificates to another stockholder before its insolvency, both parties being solvent, and authorized a change to be made on the books, defendant was relieved from the stockholders' statutory liability under Crawford & Moses' Digest, § 702, though the transfer was not made on the bank's books and was not indorsed by the bank

commissioner, as required by Acts 1921, c. 496, § 3." That was a case in which there was an attempt to enforce a stockholder's statutory liability, which relief was denied because both parties were solvent and had authorized a change to be made on the books of the bank, which was solvent when the stock was transferred; whereas no attempt was made here to show that defendant was solvent or had authorized and directed a transfer of the stock to be made as required by the act of 1921.

We conclude therefore that the defendant was the owner of the stock outstanding in his name in the Citizens' Bank. But we are also of the opinion that the act of 1921, *supra,* does not apply to the stock in the consolidated bank. The stock originally owned by defendant in the Crawford County Bank was never transferred to intervener, nor was there a reissuance of the stock of that bank. This bank passed out of existence by consolidation with another bank, and the consolidated bank became known as the First and Crawford County Bank, and became the successor of both the First National Bank and the Crawford County Bank. The stock in the consolidated bank was originally issued to intervener, and this transaction does not appear to have been in fraud of creditors, but was *bona fide,* as the intervener paid to the Crawford County Bank an indebtedness due it by defendant, his father, exceeding the value of the stock owned by defendant in the Crawford County Bank. There has therefore been no transfer of the stock of the First and Crawford County Bank, and the act of 1921, *supra,* has no application.

We conclude therefore that the chancellor was correct in holding that intervener was the owner of the stock in the new or consolidated bank, and it was therefore not subject to a levy by defendant's creditors.

The decree of the court below will be modified to the extent of holding that the stock in the Citizens' Bank was subject to levy and sale, and in all other respects it will be affirmed.